JPL:BLW/DIB
F. #2023R00421

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
* JULY 8, 2026 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ZHUOYING CHEN,
    also known as "Jolene," and
HAOJIE ZHANG,
    also known as "Kevin,"

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**I N D I C T M E N T**

Cr. No. _____26-CR-205_____
(T. 18, U.S.C., §§ 982(a)(1), 982(b)(1), 1956(h) and 3551 et seq.; T. 21, U.S.C., § 853(p))

Judge Margo K. Brodie
Magistrate Judge James R. Cho

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment unless otherwise indicated:

I.    <u>The Defendants and Relevant Individuals</u>

    1.    The defendant ZHUOYING CHEN, also known as "Jolene," was a citizen of the United States and a resident of Brooklyn, New York.

    2.    The defendant HAOJIE ZHANG, also known as "Kevin," was a citizen of the United States and a resident of Queens, New York.

    3.    Cheng Wei Huang, also known as "Zack" ("Huang"), was a resident of Queens, New York.

    4.    Co-Conspirator 1, an individual whose identity is known to the Grand Jury, was believed to have been a resident of China.

5.    Victim 1, an individual whose identity is known to the Grand Jury, was a resident of the United States.

6.    Victim 2, an individual whose identity is known to the Grand Jury, was a resident of the United States.

II.    Pig-Butchering Investment Scams

7.    "Pig-butchering" (or "sha zhu pan") scams were cyber-enabled investment fraud schemes in which malicious actors contacted unwitting victims through messaging or social media applications and convinced them to transfer funds to specified accounts based on false promises that the funds would be invested and generate profits.   In reality, the funds were misappropriated from the victims and laundered for the benefit of the perpetrators.   Pig-butchering scams often relied on social engineering to earn victims' trust to induce the fraudulent investments.

8.    Pig-butchering scams typically involved four stages.   First, a perpetrator would use a fictious identity and cold contact a victim on a messaging or social media application.   Second, the perpetrator would establish a relationship and build trust with the victim by continuing to message the victim over days, weeks or months.   Third, the perpetrator would devise a false narrative to induce the victim to send a series of payments.   Common narratives included lucrative investment opportunities.   Many perpetrators would convince victims to use fraudulent websites or applications, controlled by scammers, to invest. Perpetrators coached victims through the investment process, showed them fake profits and encouraged them to invest more.   Fourth, the perpetrator would disengage from the victim once the victim's funds were stolen, generally cutting off all contact.

3

III.    The Money Laundering Conspiracy

9.    In or about and between December 2020 and October 2022, the defendants ZHUOYING CHEN and HAOJIE ZHANG, together with others, engaged in a money laundering scheme in which the defendants and others knowingly and intentionally facilitated, concealed and disguised the transfer of funds, knowing that the funds represented the proceeds of unlawful activity.

10.    The funds were stolen from, among other sources, victims of pig-butchering scams (the "Investment Scam") and a related scheme to defraud one or more financial institutions and to obtain money from one or more financial institutions under false or fraudulent pretenses, representations or promises.

11.    In furtherance of the scheme to launder, conceal and disguise the funds fraudulently obtained from victims, the defendants ZHUOYING CHEN and HAOJIE ZHANG, together with others including Huang, and in coordination with others located in China, including Co-Conspirator 1, managed and operated a network of more than a dozen individuals located primarily in Queens and Brooklyn, New York (the "New York Network").

12.    The defendants ZHUOYING CHEN and HAOJIE ZHANG, together with Huang and others, also opened and caused others, including participants in the New York Network, to open bank accounts under false pretenses, including in the names of shell companies, at branches located primarily within the Eastern District of New York.   These bank accounts were later used to launder proceeds of the Investment Scam.

13.    During the relevant time period, the defendant ZHUOYING CHEN, among other things, managed the New York Network's bank accounts and served as its primary liaison with co-conspirators in China, including Co-Conspirator 1.   Beginning in or about

December 2021, the defendant HAOJIE ZHANG helped lead the New York Network, together with CHEN and others, during which time ZHANG, among other things, recruited co-conspirators to join the New York Network, supervised its members, and coordinated with co-conspirators in China to facilitate the laundering of victim funds to locations abroad.

14.    The defendants ZHUOYING CHEN and HAOJIE ZHANG, together with Huang and others, profited from the scheme by retaining a portion of the victim funds—which CHEN at times referred to as her "salary"—laundered by the New York Network.   For example, on or about January 10, 2022, CHEN texted Huang requesting that her "salary" be increased. Huang replied that CHEN already received "10 percent" of "every cut" of victim funds that CHEN helped launder.   As another example, on or about February 6, 2022, ZHANG texted Huang stating that ZHANG deserved a greater "cut" of the "profit[s]" derived from the laundered victim funds because he was "[d]oing a lot of work" for the New York Network.

15.    While the defendants ZHUOYING CHEN and HAOJIE ZHANG did not operate the Investment Scam, they knew of its existence and nature, and understood that the money they were laundering had been generated by the Investment Scam.   Among other things, in furtherance of the scheme, CHEN and ZHANG, together with Huang and others, communicated about victims of the Investment Scam whose money was laundered by them and the New York Network.   For example:

(a)    On or about March 18, 2022, Huang texted ZHANG a photograph of a letter written by Victim 1 in which Victim 1 indicated that he may file a lawsuit against a different member of the New York Network for defrauding Victim 1 into wiring Victim 1's money to a New York Network bank account.

(b)    In or about March 2022, Victim 2, a dentist whose name appeared on Victim 2's bank account with the professional initials D.D.S., wired over $55,000 to a New York Network bank account.   Shortly thereafter, CHEN texted Huang complaining about the bank's due diligence efforts regarding the above-described transaction: "why does a dentist send you that much money I say I have no idea what he use for he might uses to do charity…Do u know your customer I say [of course]."   Huang replied, "[this bank] is actually the most ruthless for us."

16.    In or about and between December 2020 and October 2022, the defendants ZHUOYING CHEN and HAOJIE ZHANG, together with Huang and others, oversaw the use of approximately 45 shell companies and 140 company bank accounts used to launder at least $43 million in proceeds from the Investment Scam.

## CONSPIRACY TO COMMIT MONEY LAUNDERING

17.    The allegations contained in paragraphs one through 16 are realleged and incorporated as if fully set forth in this paragraph.

18.    In or about and between December 2020 and October 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZHUOYING CHEN, also known as "Jolene," and HAOJIE ZHANG, also known as "Kevin," together with others, did knowingly and intentionally conspire to commit offenses under Title 18, United States Code, Section 1956, to wit:

(a)    to conduct financial transactions in and affecting interstate and foreign commerce, which transactions in fact involved the proceeds of specified unlawful activities, to wit: wire fraud and bank fraud, in violation of Title 18, United States Code, Sections 1343 and 1344, respectively (the "Specified Unlawful Activities"), knowing that the property

involved in such transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of Specified Unlawful Activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b)    to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmissions and transfers represented the proceeds of some form of unlawful activity and that such transportation, transmissions and transfers were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of Specified Unlawful Activities, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(c)    to knowingly engage in monetary transactions in and affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from Specified Unlawful Activities, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

<u>CRIMINAL FORFEITURE ALLEGATION</u>

19.    The United States hereby gives notice to the defendants that, upon their conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

7

20.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/

FOREPERSON

By David Pitluck, Assistant U.S. Attorney

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Margaret A. Moeser

MARGARET A. MOESER
CHIEF, MONEY LAUNDERING,
NARCOTICS AND FORFEITURE SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE